## Conclusion

For the reasons stated above, the Court concludes that Defendant's right to testify on his own behalf was not unconstitutionally denied and there was sufficient evidence for the jury to convict Defendant on count four of the indictment. Therefore, Defendant's sentence and convictions are AFFIRMED.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0114P (6th Cir.)
File Name: 00a0114p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*                                    No. 98-1708

VINCENT WEBBER,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-80116—Gerald E. Rosen, District Judge.

Argued: December 16, 1999

Decided and Filed: March 31, 2000

Before: RYAN and NORRIS, Circuit Judges; NUGENT,[*]
District Judge.

———————

## COUNSEL

**ARGUED:** Otis H. Stephens, UNIVERSITY OF TENNESSEE, Knoxville, Tennessee, for Appellant. Michael R. Mueller, ASSISTANT UNITED STATES ATTORNEY,

———————

[*] The Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio, sitting by designation.

Detroit, Michigan, for Appellee. **ON BRIEF:** Gerald L. Gulley, Jr., BAKER, McREYNOLDS, BYRNE, O'KANE & SHEA, Knoxville, Tennessee, for Appellant. Michael R. Mueller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

NUGENT, District Judge. Defendant Vincent Webber appeals his convictions and sentence on count one for conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846, counts two and three for distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), and count four for aiding and abetting distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant claims his right to testify on his own behalf was unconstitutionally denied. Defendant also alleges that there was insufficient evidence for the jury to convict him on count four of the indictment. For the reasons that follow, we AFFIRM the convictions and sentence.

### Factual and Procedural Background

On November 22, 1994, Defendant Vincent Webber met with Drug Enforcement Administration undercover agent Robert Strickland and a cooperating informant at Starters Lounge in Detroit, Michigan. Agent Strickland and the cooperating informant were there to purchase one ounce of crack cocaine (cocaine base) from Defendant. This transaction had been arranged through several telephone conversations between the cooperating informant and Defendant. After meeting Agent Strickland and the cooperating informant, Defendant paged his source, Tujuan Johnson. Shortly thereafter, Mr. Johnson entered the lounge and proceeded to the restroom, followed by Defendant and Agent Strickland. Agent Strickland purchased 20 grams (about two-thirds of an ounce) of crack cocaine from Mr.

pager number to Agent Strickland. Agent Strickland then called the pager number and set up the December 13, 1994, transaction for two ounces of crack cocaine. After arranging the transaction with Mr. Johnson, Agent Strickland paid Defendant the agreed-upon $100 dollars for the pager number and code. Without Defendant's participation, Mr. Johnson and Agent Strickland could not have completed the December 13, 1994, transaction for two ounces of crack cocaine, much less the first two one-ounce transactions. This is more than sufficient evidence for a trier of fact to determine that Defendant knew Mr. Johnson possessed the crack cocaine with the intent to sell it, and that Defendant offered assistance and encouragement to Mr. Johnson in the commission of the two-ounce sale.

Third, in regard to Defendant's argument that he never actually possessed the crack cocaine and thus should not have been found guilty of aiding and abetting, it is well-settled that it is not necessary for the government to prove that the defendant actually or even constructively possessed the drugs in order to obtain a conviction for aiding and abetting. *Ledezma*, 26 F.3d at 641 (citing *United States v. Winston*, 687 F.2d 832, 834 n.2, 835 (6th Cir. 1982)).

Reviewing the evidence in the light most favorable to the prosecution, there is ample evidence for us to determine that a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. The evidence is clear Defendant knew that Mr. Johnson, the principal, possessed crack cocaine with the intent to distribute it, and that Defendant assisted in Mr. Johnson's plan to deliver the crack cocaine. *See Ledezma*, 26 F.3d at 641. Because Defendant associated himself with the venture, participated in it, and sought by his actions to make it succeed, *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (L. Hand, J.), *quoted with approval in Ledezma*, 26 F.3d at 641, Defendant's argument that the evidence was insufficient to sustain his conviction on count four of the indictment for aiding and abetting fails.

Defendant asserts that he did not aid and abet the distribution of crack cocaine because he (1) "was *never* able to provide [Agent Strickland] with instant access to any quantity of cocaine base"; (2) "always required lead time in order to contact Johnson"; (3) "was never able to locate more than an ounce of cocaine for Strickland"; and, (4) "never had anything to do with the actual possession of the 'crack' cocaine." (Def.'s Br. at 27-28.) Defendant's arguments miss the mark.

First, in regard to Defendant's first two arguments, there is no immediacy requirement to aiding and abetting. The only strict time requirement applicable to aiding and abetting is that "one cannot aid and abet a completed crime." *Ledezma*, 26 F.3d at 642. A prolonged period of time between a defendant's actions and the commission of the offense may dissipate the strength of the government's argument that a defendant's activity could be characterized as intending to help or encourage the commission of a crime, *see, e.g., United States v. Hill*, 55 F.3d 1197, 1204 (6th Cir. 1995), but that is not the case here. In the matter at hand, the period of time between Defendant's activities and the commission of the crime was rather brief and not so attenuated as to cast doubt on the trier of fact's determination that Defendant knew that Mr. Johnson possessed crack cocaine with the intent to distribute it and assisted in Mr. Johnson's plan to deliver the crack cocaine.

Second, the fact that Defendant never located more than an ounce of cocaine for Agent Strickland and thereby cannot be linked to aiding and abetting a two ounce sale is not convincing. Defendant set up the first two transactions and met with Agent Strickland at both. After the first transaction, Defendant and Agent Strickland discussed what the future per ounce cost of crack cocaine would be and the fact that Defendant had dealt with Mr. Johnson a number of times. Defendant wanted to engage in a third transaction on the night of December 8, 1994, but Agent Strickland was unable to meet. After the first two transactions, for which Defendant received a transaction fee, Defendant sold Mr. Johnson's

Johnson for $1,100 dollars. Mr. Johnson paid Defendant $50 dollars as a "transaction" or referral fee. Agent Strickland and Defendant agreed to talk later in order to set up another transaction.

On December 5, 1994, Agent Strickland called Defendant in order to purchase another ounce of crack cocaine. Defendant told him that the price would be $1,100 dollars and said that he wanted to make more than $50 dollars for this transaction. Agent Strickland agreed to pay him an additional $50 dollars, over and above the $50 dollars that he would receive from Mr. Johnson. Defendant, Agent Strickland, and Mr. Johnson met later that day at the back of Starters Lounge, where Agent Strickland purchased 21.4 grams of crack cocaine from Mr. Johnson for $1,100 dollars. Mr. Johnson paid Defendant his $50 dollar transaction fee. Agent Strickland then spoke to Mr. Johnson about purchasing larger quantities of crack cocaine from him directly. Mr. Johnson told Agent Strickland to get his pager number from Defendant and use Defendant's code. Before leaving the bar, Agent Strickland paid Defendant the extra $50 dollars as promised. In sum, Defendant made $100 dollars for his part in the transaction.

On December 8, 1994, Agent Strickland spoke to Defendant and his sister, Mary Ann Webber, several times in order to get Mr. Johnson's pager number from Defendant. Agent Strickland visited Defendant on December 12, 1994, while Defendant was hospitalized at a Trenton, Michigan, hospital, in a further attempt to get the pager number and code. Defendant provided Agent Strickland with Mr. Johnson's pager number in exchange for $100 dollars. Agent Strickland then called Mr. Johnson from the hospital, arranging to purchase two ounces of crack cocaine the next day. After completing the call, Agent Strickland paid Defendant the agreed-upon $100 dollars for the pager number and code. On December 13, 1994, Agent Strickland met Mr. Johnson at Starters Lounge and purchased 41.6 grams of crack cocaine for $1,940 dollars.

A federal grand jury returned a four-count indictment against Defendant, Mary Ann Webber, and Tujuan Johnson on December 19, 1995. Count one charged all three with conspiracy to possess with intent to distribute cocaine base from November 21, 1994, to December 13, 1994, in violation of 21 U.S.C. § 846. Count two charged Defendant and Mr. Johnson with distribution of cocaine base on November 22, 1994, in violation of 21 U.S.C. § 841(a)(1). Count three charged Defendant and Mr. Johnson with distribution of cocaine base on December 5, 1994, in violation of 21 U.S.C. § 841(a)(1). Count four charged Defendant and Mr. Johnson with the distribution, and aiding and abetting the distribution, of cocaine base on December 13, 1994, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Defendant was arrested on February 14, 1995. He pled not guilty. Prior to trial, the trial court granted Defendant's Motion to Sever his trial from that of the other defendants.[1] Defendant's jury trial began on November 14, 1997. Prior to the conclusion of the government's case, in a discussion regarding jury instructions that took place after the jury had been excused for lunch, Defendant's counsel, Mr. Curtis Williams, stated that the defense wanted an instruction on entrapment. Defendant's counsel also indicated that Defendant was going to testify. The following colloquy took place in open court and on the record:

> THE COURT: . . . [T]here's an instruction on entrapment. I haven't heard the defense raise the issue of entrapment.
> MR. WILLIAMS: We will, your Honor.
> THE COURT: You're going to raise entrapment?
> MR. WILLIAMS: Yes.
> THE COURT: Okay. Well then, we'll leave that in. And you indicated the defendant is still intending to testify?

---

[1]Subsequent to the trial, Mr. Johnson pled guilty and the indictment against Ms. Webber was dismissed.

## III. The Sufficiency of the Evidence

Defendant contends that the government did not present sufficient evidence to sustain his conviction on count four of the indictment for distribution of crack cocaine, or aiding and abetting the distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. We review a challenge to the sufficiency of the evidence by considering the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (citing *United States v. Jones*, 102 F.3d 804, 807-08 (6th Cir. 1996)). "A defendant making such a challenge bears a very heavy burden." *Spearman*, 186 F.3d at 746 (citation omitted).

21 U.S.C. § 841(a)(1) makes it unlawful for "any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 18 U.S.C. § 2(a) states: "Whoever commits an offense against the United States or aids, abets, counsels, commends, induces, or procures its commission, is punishable as a principal."

Defendant argues that the "proof was insufficient for a rational trier of fact to find beyond a reasonable doubt that Vincent Webber aided and abetted, or otherwise distributed, 'crack' cocaine as alleged in Count Four of the Indictment." (Def.'s Br. at 26.) Defendant attempts to distinguish his case from *United States v. Ledezma*, 26 F.3d 636 (6th Cir. 1994), where this Court held that in order to prove aiding and abetting, the government must show that the defendant knew the principal possessed a controlled substance with the intent to distribute it, and that the defendant assisted in the principal's plan to deliver the controlled substance. *Id.* at 641 (citation omitted). "[T]he essence of the crime of aiding and abetting is the defendant's offering assistance or encouragement to his principal in the commission of a substantive offense." *Id.* at 642 (citations omitted).

justice if he testified at trial and was found guilty by the jury[.]" (Def.'s Br. at 18.) Defendant concludes that the timing of the trial court's colloquy and the Defendant's decision soon thereafter not to testify creates a "presumption" that the trial court "encouraged the Defendant to forego his fundamental and personal right to testify on his own behalf, thereby impermissibly chilling the Defendant's exercise of his constitutional rights." (Def.'s Br. at 24.)

While we are mindful that excessive judicial interference with a Defendant's strategic decision regarding the right to testify constitutes a "danger [that] is of great significance because the right not to testify counterpoises the right to testify, and the exercise of one is the waiver of the other", *Joelson*, 7 F.3d at 178, the trial court's instruction here was neither excessive nor so egregious that Defendant's ability to knowingly and intentionally waive his right to testify was impaired. *Id.* Rather than a "veiled threat," the trial court's instruction was a non-coercive explanation of the law.[4] The court emphasized that it was not trying "in any way" to "chill" or "inhibit" Defendant's decision whether to testify, but rather "inform him" of the requirements of the sentencing guidelines. In addition, Defendant had ample opportunity to confer with his attorney after the trial court's statements--in fact, the luncheon recess occurred right after the discussion took place--and Defendant did not make any objection that he wanted to testify. There is not a scintilla of evidence of judicial intimidation, threat, or overbearance in the record. Defendant's claim is totally without merit and is denied.

---

[4] In order for a trial court to enhance a defendant's sentence pursuant to USSG § 3C1.1 for obstructing justice because of perjury, "the district court must fulfill two requirements; first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997) (inner quotes and citations omitted).

MR. WILLIAMS: Yes, he is, your Honor.

THE COURT: Okay. Have you apprised the defendant – I ask this not to try to chill his or in any way inhibit him from testifying, if he wants to, but have you informed him that if he testifies and if he's convicted and the government moves for an enhancement based on perjury, that I'll have to make a decision about that and that would have the effect of enhancing his sentence?

MR. WILLIAMS: We have not talked specifically about that. We will.

THE COURT: You should tell him about the ramifications about that. I wouldn't want him to be surprised –

I can tell you. Mr. Weber [*sic*], let me just tell you. Under fairly recent Supreme Court law and under the guidelines, if a defendant takes the stand and testifies and is subsequently convicted, and if the government moves for an enhancement, meaning an increase in the sentence based on perjury by the defendant during his testimony at trial, I have to make a judgment as to whether or not the defendant's testimony was in fact perjurious and if it was, then I have to enhance. I don't tell you this to try to inhibit you from testifying. If you want to testify, obviously that's your prerogative. I tell you this only so that you understand that if you testify, and you're subsequently convicted and if the government moves for an enhancement based on perjury, then I'll have to make a judgment about that, and then if I find you perjured yourself, then your sentence would be enhanced. Do you understand that?

THE DEFENDANT: Yes, I do, your honor.

THE COURT: All right.

At the close of the government's case, Defendant's counsel, at a sidebar discussion, moved to dismiss count four of the indictment pursuant to Federal Rule of Civil Procedure 29, alleging there was insufficient proof to sustain a guilty verdict regarding the December 13, 1994, purchase of crack cocaine. The trial court denied the motion. The following dialogue took place at that sidebar and on the record:

MR. WILLIAMS: Your Honor, first thing I wanted to mention was that we've changed our approach. We no longer want the entrapment instruction given. Also [Defendant] is not going to testify.

. . . .

THE COURT: . . . All right. He's not going to testify?

MR. WILLIAMS: No, he's not going to testify.

. . . .

THE COURT: . . . What do you want to do? It's only 2:30.

MR. WILLIAMS: We're going to rest.

THE COURT: Do you want to go right into closing?

MR. WILLIAMS: Can you give us about fifteen minutes to get organized a little bit? I didn't expect to get there this fast.

THE COURT: You may want to have Mr. Weber [*sic*] put on the record that he's decided not to testify, after we send the jury out.

MR. WILLIAMS: Okay. Very well.

THE COURT: You may want to do that. It would probably be a good idea.

MR. WILLIAMS: I think so.

(Sidebar concluded.)

Immediately after the sidebar concluded, the following took place in open court, on the record, and in the presence of Defendant.

THE COURT: All right, the government rests, Mr. Williams.

MR. WILLIAMS: The defense rests, your Honor.

. . . .

(Jury exited at 2:32 p.m.)

THE COURT: Okay, about 15, 20 minutes?

Okay, in that case since Mr. Weber [*sic*] is not testifying, I'm going to take out the instructions on the defendant's testimony as well as the impeachment of defendant by prior convictions. And I should probably take out, as well, the entrapment instruction.

MR. WILLIAMS: Yes, your honor.

If this Court is determined to adhere to the majority rule that a trial court is not required to put defendant's choice to testify on the record, Defendant argues, then it should apply the Third Circuit's exception to the rule: "[I]n exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected." *Pennycooke*, 65 F.3d at 12. The *Pennycooke* court's illustration of an "exceptional circumstance" was a defendant who repeatedly interrupted the trial to express his desire to testify and interjected that his attorney was lying when his attorney told the court that the attorney and the defendant had made a joint decision that the defendant would not testify. *Id.* at 12 (citing *Ortega v. O'Leary*, 843 F.2d 258 (7th Cir. 1988)). This is not such a case.

In the case at hand, there is no evidence that Defendant either made an open expression of his desire to testify or had any desire whatsoever to take the witness stand in his trial, let alone any evidence that Defendant's counsel or the trial court ignored Defendant's desire to exercise his right to testify. In fact, Defendant concedes in his Brief to this Court that "before the [court's] admonition Mr. Webber planned to testify; shortly after the admonition Mr. Webber changed his mind and decided not to testify." (Def.'s Br. at 24.) There is no evidence in the record that Defendant attempted to communicate with and "alert the trial court" to a disagreement with defense counsel regarding whether Defendant should take the stand. The trial court had no duty, under the facts presented here, to inquire *sua sponte* whether Defendant was knowingly, voluntarily, and intelligently waiving his right to testify. In sum, Defendant's claim fails.

Next, Defendant argues that the colloquy between the trial court and Defendant regarding the potential for a sentencing enhancement amounted to an unconstitutional "chilling" of his right to testify. Defendant contends that the trial court improperly interjected itself into the defense team's strategic and tactical decisions and gave him "what was essentially a veiled threat to find [him] guilty of perjury and obstruction of

A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer*, 1997 WL 12125 at *2. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

In the matter at hand, Defendant urges this Court to reject the reasoning in our earlier unpublished opinions and the opinions of the majority of other circuit courts as "fatally flawed" and hold that waiver of the right to testify--like some other fundamental rights--must be made on the record by the trial court. We decline to do so.[3] While we recognize that trial courts are required to inquire directly of the defendant in regard to whether the defendant is knowingly and intentionally entering a plea of guilty, waiving a jury trial, or foregoing the assistance of counsel, *see Ortiz*, 82 F.3d at 1070-71 (citing Supreme Court cases), we are convinced that the right to testify "qualitatively differs" from those rights in that a *sua sponte* inquiry from the trial judge regarding the defendant's choice to testify might impede on an appropriate defense strategy, might lead the defendant to believe that defense counsel has been insufficient, or might inappropriately influence the defendant to waive the Fifth Amendment right *not* to testify. *See United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995).

---

[3]We recognize that our unpublished opinions carry no precedential weight; they often do, however, carry persuasive weight. *See Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996) (noting that unpublished opinions carry no precedential weight and have no binding effect on anyone other than the parties to the action); 6 CIR. R. 206(c) (stating that only published opinions are binding on subsequent panels).

THE COURT: Have you had a chance to review the instructions, Mr. Williams?

MR. WILLIAMS: Yes, I've had an opportunity to review the instructions and I have discussed them with Mr. Weber [*sic*], your Honor.

THE COURT: Are they satisfactory now with these changes that we discussed before lunch break and now with the changes that I'm making now, to take out the entrapment instruction, the instruction on the defendant's testimony and the impeachment by defendant by prior convictions.

MR. WILLIAMS: Yes, your Honor.

THE COURT: Okay. Very good.

Defendant was not asked personally by the trial court whether he wanted to testify or whether he was aware that his attorney, at the sidebar, had waived Defendant's right to testify after previously informing the court that Defendant intended to testify. Although the court and defense counsel discussed in open court Defendant's decision not to testify and changes in the jury instructions, Defendant was never asked to personally comment on this change in trial strategy or put his decision not to testify on the record. Defendant was present in court and heard his attorney agree with the trial judge's comments relating to the Defendant not testifying and the Defendant not proceeding with an entrapment defense. Defendant never objected to this defense tactic or attempted to alert the court that he desired to testify.

The jury returned a verdict of guilty on all four counts on November 18, 1997. Defendant was sentenced on May 22, 1998, and ordered to serve 210 months incarceration concurrently on each count. Judgment was imposed on May 22, 1998, but not entered until June 16, 1998. Defendant filed his timely appeal on June 1, 1998.

**Discussion**

## I.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and Federal Rules of Appellate Procedure 3 and 4(b).

## II.   The Right to Testify

Defendant argues that his rights under the Fifth and Sixth Amendments to the Constitution were violated when (1) his right to testify on his own behalf was waived by his attorney and, (2) the trial court impermissibly "chilled" his right to testify.    We review *de novo* whether Defendant's constitutional rights were violated at the trial stage of his proceedings.

The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant. *See Rock v. Arkansas*, 483 U.S. 44, 52, 53 n.10 (1987); *Pelzer v. United States*, 105 F.3d 659 (table), 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution." *Rock*, 483 U.S. at 51. It is a right that is "'essential to due process of law in a fair adversary process'" and thus falls under the protections of the Fifth and Fourteenth Amendments. *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)). The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call "witnesses in his favor"--which, of course, would include himself. *Id.* at 52 (citation omitted). In addition, the right to testify is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.*

The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional.

*Joelson*, 7 F.3d at 177.  The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide. *See Pelzer*, 1997 WL 12125 at *2 (citation omitted).

Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. *Joelson*, 7 F.3d at 177.  This is so because the defendant's attorney is presumed to follow the professional rules of conduct[2] and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984).  Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record. *Joelson*, 7 F.3d at 177.  *See also United States v. Ortiz*, 82 F.3d 1066, 1069 n.8 (D.C. Cir. 1996) (noting the agreement of the First, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits that the trial court does *not* have a duty to *sua sponte* conduct an on-the-record colloquy regarding waiver); *Knox v. Morris*, 908 F.2d 973 (table), 1990 WL 106789, at *1 (6th Cir. July 30, 1990) (holding that trial court has no duty to establish waiver on record); *United States v. Yarbrough*, 896 F.2d 554 (table), 1990 WL 17263, at *2 (6th Cir. Feb. 27, 1990) (same).

---

[2] *See, e.g.,* ABA MODEL RULES OF PROFESSIONAL CONDUCT RULE 1.2(a) & cmt. (1995) ("In a criminal case, the lawyer shall abide by the client's decision . . . whether the client will testify."); ABA STANDARDS FOR CRIMINAL JUSTICE 4-5.2(a)(iv) (3d ed. 1993) ("whether to testify in his or her own behalf" is a decision "to be made by the accused after full consultation with counsel").