RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0206P (6th Cir.)
File Name: 02a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　　*v.*　　　　　　　　　　No. 00-1188

ALONZO FULTON HOVER,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00097—Robert Holmes Bell, Chief District Judge.

Argued: May 1, 2002

Decided and Filed: June 12, 2002

Before: SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Melvin Houston, Detroit, Michigan, for
Appellant. Donald A. Davis, ASSISTANT UNITED
STATES ATTORNEY, Grand Rapids, Michigan, for

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

1

Appellee. **ON BRIEF:** Melvin Houston, Detroit, Michigan, for Appellant. Donald A. Davis, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

————————————

## OPINION

————————————

JOSEPH M. HOOD, District Judge. The defendant, Alonzo Fulton Hover, was convicted of conspiracy to commit an offense against the United States by causing counterfeit currency to be brought into the country and possessing, uttering, publishing, and passing the same in violation of 18 U.S.C. § 472, and of buying, selling, exchanging, transferring, and passing counterfeit currency as true and genuine in violation of 18 U.S.C. § 473. The defendant appeals his sentence for these convictions, contending that the district court (1) improperly increased his offense level based on the fact that part of defendant's offenses was committed outside of the United States, and (2) erred in using defendant's perjury in his first trial as the basis for an offense level increase for obstruction in the second trial. For the following reasons, we **AFFIRM**.

## I. Background

The defendant was indicted, along with three co-defendants (Felipe Guilermo Wated, Scott Harold Barnes, and Samuel Terfa), on June 28, 1999, for conspiracy to commit an offense against the United States by causing counterfeit currency to be brought into the country and possessing, uttering, publishing, and passing the same in violation of 18 U.S.C. § 472. In addition, each member of the conspiracy was charged individually with buying, selling, exchanging, transferring, and passing counterfeit currency as true and genuine in violation of 18 U.S.C. § 473. Wated and Barnes subsequently pleaded guilty to the charges, and agreed to testify on behalf of the United States against Terfa and the defendant.

The record reflects that in 1998 Wated began moving counterfeit money into the United States from Cali, Colombia, for a man dubbed "Juancho." Wated enlisted the aid of Barnes, Terfa, and eventually, the defendant.

Wated testified that he met the defendant through a mutual friend several years prior to the counterfeiting operation. Wated contacted the defendant and asked if he would be interested in helping him move some counterfeit into the United States. The defendant told Wated that he might be interested. Wated did not have the counterfeit at this time, however.

Wated again contacted the defendant in March of 1999 and arranged for him to meet with Barnes in Detroit to pick up $10,000 in counterfeit bills. Following the initial meeting, Wated arranged another pick-up for the defendant of an additional $50,000 through Barnes. Thereafter, Terfa and the defendant, after moving the counterfeit, would make cash deposits of "good" money into a joint checking account owned by Barnes and Wated. On at least two occasions, Wated and the defendant wired payments directly to Colombia.

In April of 1999, Wated arranged for Barnes to receive another shipment of $60,000 from Colombia. Of that money, $10,000 was distributed to Terfa and the remaining $50,000 to the defendant. Water then planned another delivery from Colombia to take place in May of 1999.

Wated testified that he had arranged for $70,700 to arrive from Colombia, but he became concerned when the May delivery was delayed for some reason. Unknown to Wated, the money had actually been intercepted by customs officials in Memphis, Tennessee. Customs officials had been previously notified to be looking for packages coming from Colombia to Grand Rapids, Michigan. Secret Service agents arranged for a controlled delivery of the package on May 28, which led to the arrest of Barnes. Wated was subsequently arrested on May 30.

The government arranged for two more controlled deliveries to take place on May 31, for the purpose of arresting Terfa and the defendant. Barnes contacted the defendant and arranged a pickup of the counterfeit money. The defendant was arrested when he arrived at the predetermined location and attempted to take possession of the counterfeit.

The defendant and Terfa were initially tried jointly on September 7, 1999, before Judge Richard Alan Enslen. Both Wated and Barnes testified on behalf of the United States. On September 10, 1999, near the end of the proceedings, Judge Enslen declared a mistrial with regards to the defendant, based on ineffective assistance provided by defense counsel. The trial court cited several factors in support of this determination.

The defendant was tried a second time, on the same charges, in front of Judge Robert Holmes Bell. A jury found the defendant guilty on both counts. On February 17, 2000, the defendant was sentenced to thirty-six (36) months on each count, to be served concurrently. In reaching its decision, the court relied on the Presentence Investigation Report prepared by the probation office. The Report called for enhancements based on (1) obstruction of justice (the defendant's perjury) under U.S.S.G. § 3C1.1, and (2) commission of part of the crime outside of the United States (in Columbia) under U.S.S.G. § 2B5.1. The defendant appeals the court's application of these Guidelines to increase his offense level.

## II. Standard of Review

Legal conclusions regarding application of the United States Sentencing Guidelines are reviewed *de novo*, while factual findings are reviewed for "clear error." *United States v. Raleigh*, 278 F.3d 563, 566 (6th Cir. 2002) (citations omitted).

## IV. Conclusion

Neither of the defendant's arguments merit reversal of the sentencing court's application of the Guideline enhancements. The plain language of U.S.S.G. § 2B5.1(b)(5) does not impose a knowledge requirement. Even if such a requirement were read into the provision, the sentencing court found that the defendant had such knowledge.

U.S.S.G. § 3C1.1 provides for an additional two-level enhancement for perjury. The record is replete with factual findings, as well as examples, of the defendant's perjury. We find persuasive the Ninth Circuit's decision in *Stout*, which concludes that consideration of perjured testimony from a mistrial is relevant in determining whether or not an obstruction of justice enhancement should be applied in the sentencing phase of a subsequent trial on the same charges.

Based on the foregoing conclusions, the decision of the district court to apply both sentencing enhancement provisions is **AFFIRMED**.

reasoned that the same conduct was at issue in both the first trial and the plea, and that therefore they formed part of the same prosecution under the Guideline.

Given that in the instant case the defendant was retried *on the very same charges* (and not just on reduced charges, as in *Stout*), the Ninth Circuit's reasoning would seem to apply with even greater force here.

The only remaining issue is whether the sentencing court identified sufficient findings of fact in support of the obstruction of justice enhancement. In *United States v. Dunnigan,* 507 U.S. 87 (1993), the Supreme Court held that a sentencing enhancement based on perjury must be accompanied by an independent finding by the court that the defendant did, in fact, commit perjury. *Id.* at 95. Furthermore, the Court noted that it is preferable for the sentencing court to address each element of the alleged perjury in a clear and separate finding. *Id.* On the other hand, the Court did state that a district court's enhancement is sufficient if the court makes a finding of obstruction of justice that encompasses all of the factual predicates for a finding of perjury. *Id.* In the case at hand, the district court made such findings of fact. To wit:

> This Court has reviewed this transcript [from the mistrial proceeding] and is shocked, shocked with Mr. Hover's boldfaced lies. The monies, when he got them, how he used them, how much he got. I mean, the government's outlined them. There's no reason to repeat what the government just said and Mr. Davis just said because that's exactly what the transcript reflects. Clearly greatly at odds with all the evidence in this case.

Were there to be any doubt, Judge Bell put it directly: "I don't know what world we're living in, but Mr. Hover committed perjury."

## III.  Discussion

### A.  Enhancement for Offenses Occurring Outside the United States

The defendant contends that the district court improperly increased the offense level based on the assertion that part of the offenses was committed outside of the United States. In support of this contention, the defendant maintains that evidence offered at trial and sentencing was insufficient to establish that he had knowledge of the origin of the counterfeit currency. This argument is without merit.

The Guideline in question, U.S.S.G. § 2B5.1(b)(5), states: "If any part of the offense was committed outside the United States, increase [the base offense level] by 2 levels." The plain language of the provision does not require that a defendant possess express knowledge of any acts occurring outside of the United States. Instead, it provides for a two-level enhancement based solely on the fact that "any part" of the act occurred outside of the United States. There is no basis for a knowledge requirement to be read into the Guideline.

Even if the Guideline were so construed, however, the district court found - and the record reflects - that the defendant possessed such knowledge. For example, Wated testified that the counterfeit money originated in Cali, Columbia from an individual referred to as "Juancho.". Wated also testified on both direct and cross-examination that on at least two occasions the defendant wired payments for the counterfeit money directly to Colombia. In addition, Agent Sweeney of the United States Secret Service testified at the sentencing hearing that, following his arrest, Wated informed the Secret Service that the defendant had twice wired money through Western Union from Detroit, Michigan to Cali, Colombia.. There was *no* evidence, whatsoever, offered to refute the testimony of either witness. Based on this undisputed testimony - and on the absence of any evidence in rebuttal - the district court found U.S.S.G. § 2B5.1 to be applicable.

In conclusion, a plain reading of U.S.S.G. § 2B5.1 does not suggest a knowledge requirement. Even if knowledge were required, however, the record contains ample facts to impute knowledge of the counterfeit currency's origin to the defendant. Such a factual finding by a lower court will only be overturned when found to be clearly erroneous, and a finding of fact will be deemed clearly erroneous only where there is a definite and firm conviction that a mistake has been committed, based on a review of the record as a whole. *Raleigh*, 278 at 566. Based on the record here, no such mistake can be said to have occurred. The defendant's argument is without merit.

B.    Enhancement for Obstruction of Justice (Perjury)

The defendant also contends that the district court erroneously increased the offense level based on his perjury in the first trial. The defendant alleges that the first trial court's decision to declare a mistrial based on ineffective assistance of counsel negates the ability of the district court to consider his perjury in sentencing. Although a question of first impression in this Circuit, the Ninth Circuit has rejected a similar argument and the argument appears inconsistent with a plain reading of the Guideline in question, U.S.S.G. § 3C1.1. The Guideline reads:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice *during the course of the investigation, prosecution, or sentencing of the instant offense of conviction*, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (emphasis added).

The defendant does not argue that he did not perjure himself in the first trial. Instead, the defendant asserts that his perjury should not be considered in his sentencing because the

first proceeding culminated in a mistrial declared on account of ineffective assistance of counsel.

A defendant's right to testify is a fundamental constitutional right subject only to voluntary and knowing waiver. *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000) (citations omitted). Defense counsel's role is to advise the defendant whether or not he should take the stand, but the ultimate decision belongs to the defendant. *Id.* at 551. Based on these fundamental principles, it is difficult to understand the defendant's argument that his culpability is lessened by his counsel's ineffective assistance. The sentencing court addressed this issue by noting that defense counsel did not put words into the defendant's mouth, and that therefore defendant should not be able to place blame on counsel in defendant's first trial. Rather, the court found that the defendant's perjured testimony was volitional, and that therefore it could not be excused based on ineffective assistance.

The issue, then, would seem to reduce to this: Are defendant's first and second trials part of the same "prosecution" for purposes of U.S.S.G § 3C1.1? If so, defendant's argument is without merit.

This is something of a novel legal question. The only court to have addressed this issue in a published opinion is the United States Court of Appeals for the Ninth Circuit, in *United States v. Stout,* 936, F.2d 433 (9th Cir. 1991).

In *Stout*, the defendant - after a mistrial - pled guilty to a less serious charge based on the same criminal conduct. In addressing the very same question decided here, the Ninth Circuit held that the defendant's perjury in the first trial (the mistrial) *could* be considered for purposes of applying U.S.S.G. § 3C1.1 when the defendant subsequently pleaded guilty to reduced charges. Said the court: "The mere fact that, after a mistrial, [the defendant] pled guilty to a less serious offense based on the same criminal conduct *does not make the plea bargain into a separate prosecution*." *Id.* at 435 (emphasis added). In support of this conclusion, the court