NOT RECOMMENDED FOR PUBLICATION
File Name: 12a1207n.06

No. 11-1595

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 21, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CLAUDE VARNEY, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE UNITED |
| RAYMOND BOOKER, | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) |
| | ) |
| _____ | ) OPINION |

Before: GILMAN, GIBBONS, and ROGERS, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Claude Varney was convicted in the circuit court for Wayne County, Michigan of second-degree murder and of possessing a firearm in the commission of a felony. He was sentenced to serve 20 to 30 years in prison on the former charge, consecutive to a 2-year prison term on the latter charge. Varney filed a motion for a new trial, arguing that he had received the ineffective assistance of counsel at his bench trial. The circuit court, with the same presiding judge, held an evidentiary hearing and granted Varney's motion. But the State appealed, and the Michigan Court of Appeals peremptorily reversed the trial court's order. Varney's subsequent direct appeal and his petitions for post-conviction relief in the state courts were unsuccessful.

He then filed a petition for a writ of habeas corpus in federal district court. The district court denied his petition but granted a certificate of appealability with respect to Varney's claim that his

trial counsel was ineffective in not calling Varney to testify in support of his self-defense theory of

the case. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In September 1993, Varney shot and killed Tommy Maples in a bar in Detroit, Michigan.

Varney was arrested and charged with second-degree murder, in violation of M.C.L. § 750.317, and

with possessing a firearm in the commission of a felony, in violation of M.C.L. § 750.227b.

Witnesses at Varney's bench trial gave conflicting accounts of the events surrounding Maples's

death. The following paragraph summarizes the trial court's findings of fact.

Varney entered the bar with a group of people, approached Maples, and began speaking to

him. The two men sat down at a table together, continuing a conversation that nearby witnesses

described as outwardly friendly. There was no evidence of an argument or confrontation. Then

"[a]n unusual sound was heard, possibly the scraping of chairs at the table," and the two men stood

up, Maples with his hands raised and Varney "armed with a handgun." Varney fired a bullet into

Maples's body "for no apparent reason." Varney might have believed that Maples was reaching for

a weapon, but Varney did not see a weapon and Maples had none. Whatever Varney's belief, it did

not warrant his shooting Maples "under the circumstances then obtaining." The court concluded that

the killing was in no way justified or excused, thus finding Varney guilty as charged.

Varney filed a motion for a new trial, alleging that he was denied his Sixth Amendment right

to the effective assistance of counsel. The trial court held an evidentiary hearing on Varney's

motion, referred to in Michigan as a *Ginther* hearing. *See, e.g.*, *People v. Dendel*, 748 N.W.2d 859,

863 (Mich. 2008) (citing *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)) (referring to a "*Ginther*

hearing to determine whether [trial counsel] had provided ineffective assistance"). Both Varney and his former trial counsel, Dominick Sorise, testified about the defense that Sorise provided and the reasons why Varney did not testify at the trial.

Sorise said that Varney initially wanted to take the witness stand, but that, after at least one argument between the two men, Sorise convinced him that he should not testify. At no point did Sorise explicitly advise Varney of his constitutional right to testify in his own defense. Instead, Sorise "assumed [Varney] understood that he had a right or an opportunity to testify." Sorise explained that he advised Varney not to testify because the prosecution had already entered into evidence a statement that Varney had made to Detective Patrick Henahan sufficiently explaining Varney's self-defense story. That statement, as related by Det. Henahan at trial, was as follows:

> I went in the bar. I saw Tommy [Maples] in there. He waved me to come over where he was. I walked over to him and he said, come on. I want to talk to you. We walked over to a table. We sat down—and we sat down. He said to me, you know I shot a couple of your members and I shot at you before. And now I'm going to kill you. Then he reached behind his back like he was going for a gun and I shot him.

Det. Henahan went on to testify that Varney "stated it looked like Mr. Maples was reaching for a gun," but that he did not "hear [Varney] say anything about seeing a gun."

Varney's testimony at the *Ginther* hearing told a somewhat different story about the decision to not have him take the witness stand and about the statement that he made to Det. Henahan. Consistent with Sorise's testimony, Varney said that the two men argued about whether Varney should testify at trial and that Sorise never advised him of his constitutional right to testify. But unlike Sorise's account of his convincing Varney not to testify, Varney claimed that Sorise told him, without explanation, that he could not take the stand. Varney said that he told Sorise what he wanted

to say on the stand and that he "felt it was important for the Court to know exactly what happened." Sorise allegedly responded, "no, you are not taking the stand."

Varney also testified that Det. Henahan's testimony was mistaken because Varney had told the detective that Maples had in fact pulled a gun on him, not that Maples merely "reached as if to have a gun." Although Varney did not specifically testify that he had informed Sorise of having seen Maples with a gun, he claimed to have told Sorise "everything" about the issues that he was now raising at the *Ginther* hearing. Sorise could neither dispute nor confirm that Varney had told him about seeing Maples with a gun at the time of the shooting. But Sorise was certain that Varney had "indicated that Mr. Maples reached behind him as if to draw a gun and began drawing out a gun." Furthermore, a defense witness, Marcello Guglieletti, testified at the trial that Maples "pull[ed] a gun before [Varney] shot [Maples]."

The trial court considered the two "strongly held" positions presented at the *Ginther* hearing: (1) Sorise's testimony that he merely *advised* Varney not to testify, and (2) Varney's contrary claim that Sorise did not *allow* him to testify. Whether the decision was unilateral or joint, the court made clear that the decision was "critical" for two related reasons. First, Varney's testimony would have supported his argument that his "unsigned, and therefore unadopted" statement to Det. Henahan was either "incomplete, . . . altered, or not his at all." The trier of fact would have heard that Varney saw Maples draw a weapon, rather than that Varney simply saw Maples make a motion as if to draw a weapon. Second, "short of some other person describing circumstances that would to an ordinary mind raise the question of whether the accused reasonably and honestly feared for his life or being

-4-

seriously injured," Varney's only method of establishing that he had such fear would be by his own testimony.

The state trial court believed that Varney had lied when he said that Sorise did not explain why Varney should not take the stand. But it noted that no record had been made at trial "as to why [Varney] didn't testify." Giving Varney "the benefit of the doubt," the court granted the motion for a new trial. The Michigan Court of Appeals, however, peremptorily reversed the circuit court's order, finding that Varney had "not overcome the presumption that trial counsel rendered effective assistance when advising him regarding his right to testify on his own behalf." Varney's petition to appeal that decision was denied by the Michigan Supreme Court. *People v. Varney*, 568 N.W.2d 680, 680 (1997) (table). His subsequent direct appeal and motions for post-conviction relief in the State courts all failed.

Turning to the federal courts for relief, Varney filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, presenting eight separate grounds in support of his petition. All of these arguments were rejected, but the court granted a certificate of appealability on Varney's claim involving counsel's alleged ineffectiveness in failing to call Varney to testify on his own behalf in support of his self-defense claim. This timely appeal followed.

## II. ANALYSIS

### A.     Standard of review

We review "the district court's legal conclusions in a habeas proceeding de novo and its factual findings under the clear-error standard." *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011).

"The state-court decision under review is entitled to deference pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which is codified at 28 U.S.C. § 2254(d)." *Titlow v. Burt*, 680 F.3d 577, 585 (6th Cir. 2012).

AEDPA provides in pertinent part as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state-court decision must be objectively unreasonable, not merely incorrect, to be an "unreasonable application" of clearly established federal law. *Titlow*, 680 F.3d at 585. Findings of fact by the state court "are presumed to be correct unless they are rebutted by clear and convincing evidence." *Id.* at 586. Varney agrees that AEDPA deference applies, and we therefore apply the AEDPA standard of review to all the issues before us.

**B.      The Michigan Court of Appeals's rejection of Varney's ineffective-assistance-of-counsel claim was not an unreasonable application of *Strickland***

Varney claims that he was denied his Sixth Amendment right to the effective assistance of counsel because Sorise deprived him of a substantial defense by failing to have Varney testify at trial. A successful claim of ineffective assistance of counsel must meet the two-prong test established in *Strickland*:   (1) "counsel's performance was deficient"; and (2) "the deficient performance

-6-

prejudiced the defense." 466 U.S. at 687. We must decide whether the state appellate court's decision was an unreasonable application of the *Strickland* test. Even though that court's order does not provide a substantive *Strickland* analysis, the Supreme Court's decision in *Harrington v. Richter* makes clear that AEDPA deference must still be given to the state court's decision because "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *see Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011) (explaining that in light of *Harrington*, "the mere fact that the Ohio Court of Appeals did not specifically explain that it was ruling on Brown's Sixth Amendment claim does not prevent this court from deferring to that court's opinion on habeas review.").

Review of a trial counsel's performance is "highly deferential" and entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Varney must therefore show that Sorise's decision not to call Varney as a witness was an "error[] so serious that [Sorise] was not functioning as [Varney's] 'counsel.'" *See id.* at 687. Then Varney must show that concluding otherwise would be an unreasonable application of *Strickland*.

Varney attempts to meet this heavy burden by arguing that his testimony was the only evidence available that could establish all the elements of his self-defense claim. The test in

Michigan for self-defense at the time of Varney's trial was whether "the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin*, 456 N.W.2d 10, 18 (Mich. 1990). Varney contends that, absent his testimony, the trier of fact had "no reasonable basis upon which to conclude that [he] acted in lawful self-defense."

To the contrary, Michigan law is clear that a defendant can "show his state of mind by circumstantial evidence to establish that he acted in self-defense" and that he "need not take the stand and testify." *People v. Hoskins*, 267 N.W.2d 417, 419 (Mich. 1978). Two key pieces of evidence in the trial record arguably support Varney's self-defense theory: (1) Varney's statement to Det. Henahan describing the events immediately preceding the shooting, including Maples's alleged threat that he was going to kill Varney and that Maples made a motion as if to draw a weapon; and (2) testimony from Marcello Guglieletti, an eyewitness to the shooting, stating that Maples had pulled out a gun before Varney shot Maples. Sorise decided to rely on this evidence rather than have Varney testify and possibly be impeached with such facts as his fleeing the scene of the shooting, his telling another witness that he shot Maples in retaliation for Maples's shooting three of Varney's associates, and his refusing to reveal the location of his gun to Det. Henahan. *See Varney v. Booker*, No. 2:09-CV-11127, 2011 WL 1480385, at *9 (E.D. Mich. Apr. 19, 2011).

Given the Michigan law as stated in *Hoskins*, Sorise had an objectively reasonable basis to believe that the evidence he introduced, if taken by the trier of fact to be true, was sufficient to establish self-defense. *See* 267 N.W.2d at 419. Sorise's decision thus appears to have been a matter

of trial strategy, not deficient performance. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (noting that "trial strategy itself must be objectively reasonable").

To be sure, this strategy ultimately failed, and the presiding judge at the *Ginther* hearing, who was also the trier of fact at Varney's trial, stated that Varney's testimony would have been "critical" to the case. Although this post-conviction statement indicates that Varney might have fared better had he testified, it does not place Sorise's decision outside "the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.*

Furthermore, even if Sorise's decision was not sound trial strategy and he in fact provided ineffective counsel, that conclusion is not so clear as to make the state appellate court's decision an "unreasonable application" of *Strickland*. In sum, Varney has not established that he could meet the performance prong of the *Strickland* test, let alone that the facts weigh so heavily in his favor that the state appellate court was unreasonable in concluding otherwise. We therefore have no need to reach the prejudice prong of the *Strickland* test because Varney must meet both prongs in order to establish his ineffective-assistance-of-counsel claim. *See United States v. Williams*, 176 F.3d 301, 312 (6th Cir. 1999). Varney has thus failed to make the requisite showing on this claim to warrant habeas relief under AEDPA.

## C.      The determination that Varney waived his right to testify

Some confusion is apparent in the briefs concerning the precise issue that the district court certified for appeal. Varney's brief addresses the failure-to-call claim discussed above but attempts to fold in his right-to-testify argument as part of that claim. In contrast, the State's brief

characterizes the issue presented as solely concerning the right to testify but also conflates the analysis of the two separate claims. This court added to the confusion in its order denying Varney's motion to expand the certificate of appealability by first characterizing the certified issue as the failure to *permit* Varney to testify and later describing it as the failure to *call* Varney to testify.

These intertwined issues in fact raise distinct legal claims: the former concerns Varney's due process and Sixth Amendment right to testify, *see United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000); the latter concerns Sorise's alleged ineffectiveness for failing to provide a substantial defense. To clarify, the district court certified Varney's "claim involving counsel's ineffectiveness in failing to call [Varney] to testify on his behalf in support of his self-defense claim." *Varney v. Booker*, No. 2:09-CV-11127, 2011 WL 1480385, at *17 (E.D. Mich. April 19, 2011). Although not the certified issue, we will also address below the right-to-testify claim, which both parties argued to some degree.

A defendant's right "to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *Webber*, 208 F.3d 545, 550 (6th Cir. 2000). The right falls under the due process protections of the Fifth and Fourteenth Amendments, as well as "the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call witnesses in his favor—which, of course, would include himself." *Id.* (internal quotation marks omitted). Although "the right to testify is personal to the defendant," who thus retains "the ultimate decision whether to testify[,] . . . *when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.*" *Id.* at 550-51 (emphasis added).

The presumption of assent arises from two other strong presumptions: (1) that the defendant's counsel followed the professional rules of conduct, which provide that "[i]n a criminal case, the lawyer shall abide by the client's decision . . . whether the client will testify," *id.* at 551 n.2; and (2) that counsel "'rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 551 (quoting *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984)). Absent "statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to . . . inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Id.*; *see also Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (holding that the right to testify, though fundamental, can be presumed waived "from a defendant's conduct alone") (internal quotation marks omitted).

The state trial court at the *Ginther* hearing noted that no record had been made during the bench trial regarding Varney's desire to testify. Nor does Varney now suggest that the trial record contains any indication that he wanted to testify or that he had a disagreement with Sorise. Given these facts, the state appellate court applied the presumption from *Strickland* that Sorise rendered effective assistance in advising Varney of his right to testify. This decision was not an unreasonable application of *Strickland* or any other clearly established federal law.

To be sure, Sorise testified that he did not specifically advise Varney that the U.S. Constitution guaranteed Varney's right to testify. But the state appellate court's determination that

this fact alone did not overcome the *Strickland* presumption was not objectively unreasonable. *See*

*Titlow v. Burt*, 680 F.3d 577, 585 (6th Cir. 2012) (explaining that a state court decision must be

"objectively unreasonable" to be deemed an "unreasonable application of clearly established federal

law" under AEDPA). Varney is thus presumed to have knowingly waived his right to testify. *See*

*Webber*, 208 F.3d at 550-551. We therefore reject Varney's due-process claim for habeas relief.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.