**C. The district court did not err in finding that Bass had used a firearm in connection with an aggravated assault**

As his final issue on appeal, Bass questions whether the district court properly increased his offense level by four points because it found that he used a firearm in connection with an aggravated assault. *See* U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) (providing for a four-level increase if the "defendant used or possessed any firearm or ammunition in connection with another felony offense"). Bass argues that there was no evidence before the district court that he fired his gun at anyone. Officer Ellis testified, however, that Bass admitted shooting at two men who had allegedly robbed him earlier in the evening. This evidence is sufficient to support a finding that Bass had used a firearm in connection with an aggravated assault. *State v. Adams*, 45 S.W.3d 46, 56 (Tenn. Crim. App. 2001) (concluding that the evidence was sufficient to support a conviction for aggravated assault in a case where a witness testified that the defendant had fired a gun at an occupied vehicle).

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0372P (6th Cir.)
File Name: 02a0372p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.                                No. 01-5534

SHAWN OLIVER BASS,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 00-10054—James D. Todd, Chief District Judge.

Argued: September 18, 2002

Decided and Filed: October 28, 2002

Before: SILER, DAUGHTREY, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Scott G. Kirk, Jackson, Tennessee, for Appellant. Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** Scott G. Kirk, Jackson, Tennessee, for Appellant. Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

—————————

## OPINION

—————————

RONALD LEE GILMAN, Circuit Judge.  Shawn Oliver Bass was indicted for being a felon in possession of a firearm and for possession of an unregistered, sawed-off shotgun. After the district court twice denied his motion to suppress the evidence of the shotgun, Bass entered a conditional plea of guilty.  The district court subsequently sentenced him to 130 months in prison.  Bass now appeals, challenging the district court's denial of his motion to suppress and its determination of his sentence.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

On June 2, 2000, Ernestine James telephoned the Jackson Police Department (JPD) to report a disturbance within the apartment complex located at 33 Carver Street in Jackson, Tennessee.  Officer William Ellis responded to the call. Within a minute of the telephone call, he located James at the D building of 33 Carver Street. Officer Mark Headen arrived at approximately the same time.

James explained to each officer that she had just witnessed a black male fire several gunshots at two other men, one of whom was her son, and then flee into an upstairs apartment in the nearby E building.  As additional JPD officers arrived, they formed a perimeter around the E building.  Sergeant Johnny Jines then accompanied Officers Ellis and Headen to the upstairs apartment identified by James.  Niketa Jordan answered their knock.  When the officers asked who else was in the apartment, Jordan answered that her children and her husband, Shawn Bass, were there.

Officers Ellis and Headen then entered the apartment without permission and commanded the man to appear.  After

A violation of the above statute would constitute a crime of violence if it "involves conduct that presents a serious potential risk of physical injury to another." U.S. Sentencing Guidelines Manual § 4B1.2(a)(2).  "We apply a categorical approach to determine whether a particular offense creates a serious risk of physical injury to a person." *United States v. Payne*, 163 F.3d 371, 374 (6th Cir. 1998).  This approach generally "requires that a determination as to whether an offense constitutes a 'crime of violence' [be] based on the statutory definition of the crime." *Id.* (internal quotation mark omitted) (alteration in original).  But "when it is not clear from the elements of the offense alone whether the crime involved a serious risk of potential injury to another, the sentencing court may review the indictment for the specific conduct charged." *Id.* at 374 n.2; *accord United States v. Winter*, 22 F.3d 15, 18-19 (1st Cir. 1994) (holding that where the statutory definition blankets both violent and non-violent crimes, a court should assess which type of conduct the defendant was convicted of by looking at the charging papers and jury instructions).

The statutory definition alone provides an insufficient basis upon which to determine whether a prior conviction under Tennessee Code § 39-15-401 "involves conduct that presents a serious potential risk of physical injury to another." As the *Ducker* court noted, the statute contains two different classifications. Although the elements for child abuse include injury to the child, the elements for child neglect do not.  In describing Bass's 1997 conviction under Tennessee Code § 39-15-401, however, the Presentence Report states that he "was originally charged with Aggravated Child Abuse." Bass failed to object to this statement.  Aggravated child abuse clearly involves a serious risk of potential injury to another. We therefore agree with the district court's finding that Bass's prior conviction was for a crime a violence, since that determination can be reached from the record without having to examine the detailed facts of his offense.

*United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002) (emphasis omitted).

Sentencing Guidelines Manual § 4B1.2(a) defines a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Tennessee Code § 39-15-401 criminalizes both child abuse and child neglect. Neither the text nor the commentary of Sentencing Guidelines Manual § 4B1.2 mentions these offenses. A violation of the Tennessee statute does not necessarily require the use, attempted use, or threatened use of physical force. In pertinent part, the statute provides that "[a]ny person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare" commits the crime. Tenn. Code Ann. § 39-15-401(a) (1997). The Tennessee Supreme Court has explained the statute as follows:

> Tennessee's child abuse and neglect statute may be broken down into two classifications, abuse and neglect, each of which have [sic] both a conduct and a result element. Child abuse requires that: (1) a person knowingly "treat in such a manner" a child under eighteen years of age; and (2) the child sustains an injury. Child neglect requires that: (1) a person knowingly neglect a child under eighteen years of age; and (2) the child's health and welfare are adversely affected.

*State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000).

Bass exited the bedroom, the officers brought him into the apartment's living room and handcuffed him. Officer Ellis proceeded to conduct a protective sweep of the apartment. In the course of checking to see if anyone was hiding under the bed, he lifted the box springs. When he dropped the bed back into place, he noticed a sawed-off shotgun hidden between the box springs and the mattress.

Officer Ellis also discovered the empty casings of ammunition used for a handgun. When confronted with the casings, Bass told the police that he had shot at the two men as reported by James because they had robbed him earlier in the evening.

## B.    Procedural background

A grand jury returned a two-count indictment against Bass on September 18, 2000. Count One charged him with violating 18 U.S.C. § 922(g)(1) by knowingly possessing a firearm while he was a felon. The second count charged him with knowingly possessing an unregistered, sawed-off shotgun, in violation of 18 U.S.C. §§ 5841, 5861(d), and 5871.

Bass moved to suppress the evidence of the sawed-off shotgun, arguing that the police officers' warrantless entry into his apartment was unconstitutional. The district court denied Bass's motion at the conclusion of a hearing. Bass later renewed his motion, asserting that Officer Ellis's discovery of the sawed-off shotgun occurred as the result of a search that exceeded a constitutionally permissible protective sweep. The district court then held a second hearing, after which it again denied the motion.

Bass subsequently entered a conditional plea of guilty, but reserved his right to challenge on appeal the district court's denial of his motion to suppress. The district court entered judgment against Bass on April 10, 2001, sentencing him to 130 months in prison. This timely appeal followed.

## II.  ANALYSIS

### A.  The district court did not err in denying Bass's motion to suppress

"A district court's denial of a motion to suppress evidence is reviewed under a hybrid standard.  Its findings of fact are reviewed under the 'clearly erroneous' standard, but its conclusions of law are reviewed de novo." *United States v. Orlando*, 281 F.3d 586, 593 (6th Cir. 2002).

Bass offers two reasons why the evidence of the sawed-off shotgun should be suppressed.  First, he contends that the police officers' entry into his apartment was unconstitutional because they had no warrant.  "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980).   This court has "characterized the situations in which warrantless entries are justified as lying within one of four general categories: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996).

The first and fourth categories are applicable here.  James informed the police that she had seen a person later identified as Bass fire gunshots at two other people, and that the suspect had fled into a particular apartment in the E building of 33 Carver Street only minutes before their arrival.   It was therefore reasonable for the police to enter that apartment to locate both the suspect and any weapon that might be used either against them or against other people in the apartment complex. *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (holding that exigent circumstances justified the warrantless entry by police into a residence when they "were informed that an armed robbery had taken place, and that the suspect had entered [the residence] less than five minutes before they reached it").

Bass's second argument is that even if the police officers' initial entry into his apartment was lawful, Officer Ellis's discovery of the sawed-off shotgun occurred during a search whose scope exceeded constitutional parameters.  The Fourth Amendment permits officers effecting an arrest to briefly inspect the premises if they have articulable facts that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334 (1990).  Such a protective sweep is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335.

When the JPD officers arrested Bass, they were not certain that he was the shooter whom they were seeking.   The description of the apartment's occupants given by Jordan was not sufficient to make this identification, because the officers had no assurance that she was either truthful or accurate.  They were therefore justified, under these circumstances, in inspecting those spaces in the apartment where another person could have been hiding.  Officer Ellis testified that the sawed-off shotgun became visible when he lifted the box springs to check under the bed, and he affirmed that "the bed [was] on a frame sufficiently high enough for a person to be hiding under the bed."  We thus find no error in the district court's conclusion that the shotgun was discovered during a constitutionally permissible search.

### B.  Bass's prior conviction was a crime of violence

Turning to the issue of Bass's sentence, we next address his claim that the district court erred in calculating his base offense level under the United States Sentencing Guidelines.  The district court determined that under § 2K2.1 of the Guidelines, Bass's base offense level was 26.  In making this determination, the court decided that Bass's 1997 conviction pursuant to Tennessee Code § 39-15-401 was a crime of violence.  "Legal conclusions regarding application of the United States Sentencing Guidelines are reviewed de novo."