**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David C. CAMPBELL, Defendant–
Appellant.**

No. 02–5933.

United States Court of Appeals,
Sixth Circuit.

Jan. 22, 2004.

Michael E. Winck, Asst. U.S. Attorney, U.S. Attorney's Office, Knoxville, TN, for Plaintiff–Appellee.

David Carroll Campbell, pro se, Beaver, WV, Robert D. Little, Law Office of Robert Little, Maplewood, NJ, for Defendant–Appellant.

BEFORE: DAVID A. NELSON, CLAY and COOK, Circuit Judges.

CLAY, Circuit Judge.

Defendant, David C. Campbell, appeals from the judgment of conviction by the district court, sentencing Defendant to 60 months imprisonment and four years of supervised release for his jury trial conviction of the manufacturing and possession with the intent to distribute marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). For the reasons set forth below. we **AFFIRM** the district court's judgment.

## BACKGROUND

### Procedural History

On February 28, 2001, a federal grand jury sitting in the Eastern District of Tennessee returned a two-count indictment against Defendant, charging him with manufacturing more than one hundred marijuana plants and possessing with the intent to distribute more than one hundred marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Upon Defendant's not guilty plea, a jury trial was set for May 21, 2001, which was continued to May 23, 2001 for resolution of a motion to suppress, and then continued again until May 31, 2001, upon motion by the United States. On May 30, 2001, De-

fendant moved to continue the trial based on the unavailability of an allegedly indispensable witness, Thomas Brown. Defendant's motion was granted and the trial was set for July 9, 2001. On July 2, 2001, the trial date was reset for July 12, 2001.

On July 12, 2001, following a one day trial, the jury returned a verdict of guilty on both counts. A pre-sentence report was prepared with no objections from either party. On October 15, 2001. Defendant was sentenced to a mandatory minimum term of 60 months imprisonment and a term of 4 years supervised release, concurrent on each count with a $200 special assessment.

On April 8, 2002, Defendant filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel due to counsel's failure to file a direct appeal after Defendant requested he do so. After an evidentiary hearing on July 15, 2002, an order was entered granting Defendant entitlement to a delayed appeal and appointed counsel to represent Defendant on appeal. Defendant then filed a timely notice for this appeal.

### Facts

On June 13, 2000, aerial surveillance was conducted by Lieutenant Bob Crumley for the Hawkins County Sheriff's Department. Lt. Crumley noted the location of marijuana cultivation on the Greene and Hawkins county line and contacted Special Agent Greg Monroe of the Tennessee Bureau of Investigation. On June 15, 2000, Agent Monroe, along with Lt. Crumley and Officer Gerald Gibson, placed a surveillance camera in one of two marijuana patches.

The surveillance camera was equipped with a sensor that detected ground vibration which activated the camera. Officers checked the camera on June 27, 2000, and learned there had been some human activity at the site on June 24, 2000. The officers returned on July 9, 2000, but found no further activity, and the surveillance camera was then moved to the second patch approximately one hundred yards away. The officers next returned to the site on July 22, 2000. The video camera recorded human activity on July 11, 16, 18 and 2000, and the officers noticed some of the plants had been removed. Agent Monroe and other officers returned to the site on July 24, 2000, to confiscate the remaining marijuana plants.

Videotaped documentation of the confiscation by Agent Monroe resulted in a count of 132 small live plants in the first marijuana patch and 202 live plants in the second patch with 26 plants already set aside, for a total marijuana plant count of 360.

Agent Monroe reviewed the videotapes showing human activity but could not identify the person depicted on the tape. Photographs were made from the videotape and taken to numerous law enforcement agencies. Officer Tim Ward of the Third Judicial District Drug Task Force and Sheriff Steve Burns of the Greene County Sheriff's Department were shown one of the videotapes and both identified the person depicted on the tape as Defendant. These officers directed Agent Monroe to Defendant's residence at 211 Park Street. Greenville, Tennessee, where Agent Monroe observed Defendant. Agent Monroe, upon seeing Defendant, recognized him as the person depicted on the videotapes.

During the trial, the jury was shown the videotape of the person in the marijuana patches. Agent Monroe pointed out to the jury, on the videotape, that the subject in the marijuana patch wore a camouflage ball cap and sunglasses with a gold bar or gold ear pieces, and in another scene wore a camouflage cover over his face. Addi-

tionally, the jury saw, on the videotape, that on another day an individual in the patch was wearing a wrist watch with a black face and light-colored rectangular viewing area. The jury also viewed the videotape showing Agent Monroe counting the number of plants cut from the patches.

After Officer Ward and Sheriff Burns told Agent Monroe Defendant's address, Monroe set up surveillance at defendant's residence at 211 Park Street. Agent Monroe followed Defendant from the Park Street Address to a gas station and observed that Defendant was wearing what appeared to be the same sunglasses worn by the individual on the videotapes. A search warrant was executed for Defendant's residence on August 2, 2000. Agents seized a watch and sunglasses because they resembled the watch and sunglasses worn by the individual shown on the videotape, and seized a camouflage ball cap and camouflage face netting also like the one worn by the person on the videotape. The officers executing the warrant also found scales similar to those used to measure drug quantities, zip-lock baggies, and processed marijuana at the residence. All of this evidence was introduced at trial.

The government also introduced the search warrant into evidence, to which defendant made a general objection stating, "Your Honor, I object to it. I don't think it's appropriate. It's a summary of what [Agent Monroe] talked about today. I don't think it's appropriate to go to the jury." Defendant's objection was overruled and the warrant was admitted.

Sheriff Steve Burns of the Greene County Sheriff's Department testified at trial that he had known David Campbell for several years, had viewed the videotape, and identified defendant as the person on the videotape from the marijuana patch. Tim Ward, a Greenville police officer assigned to the Third Judicial District Drug Task Force, also testified defendant was the person on the videotape.

Samples of the plants were taken and sent to the crime lab. The government presented expert testimony by chemists who had tested the materials seized from the plants which confirmed that they were marijuana.

After the government rested. defendant moved for judgment of acquittal on the grounds that the videotape and other evidence failed to identify defendant, which was overruled by the court.

Following lunch recess, defendant made an oral motion to adjourn the case to permit defendant to locate a witness who allegedly would be beneficial to his defense, and whose relevance was justified "in light of the evidence the government has put on." The witness was a physician at the Veteran's Administration hospital in Johnson City, located in a nearby county. Defendant's counsel did not specify as to what the new witness would testify, and implied he was not at liberty to specify at that time why his relevance became known in the middle of the trial. The district court had previously granted a trial continuance at Defendant's request to call a witness who was at that time admitted to the Veteran's Hospital. The Court had also continued the trial three other times. once at the government's request, once for resolution of a pre-trial motion and the last continuance for unknown reasons, not recorded in the record. Relying on these past continuances, the district court denied Defendant's motion to continue, citing the request as a delaying tactic.

When the district court asked whether Defendant was going to offer any proof, Defendant initially stated he would testify. The court then briefly explained to Defendant some of his rights. such as his right not to testify and urged that he consult

with his counsel. Defense counsel then stated that Defendant would not testify. Defendant called no witnesses in his defense and the jury was thereafter instructed. A verdict of guilty was returned that same day.

## DISCUSSION

This Court reviews challenges of a violation of Defendant's constitutional rights at the trial stage *de novo*. *United States v. Webber*, 208 F.3d 545, 550 (6th Cir.2000).

### A. The Lower Court's Duty in Determining Defendant's Right Not to Testify

■ Defendant first argues that his constitutional right to testify was violated when the trial court did not, *sua sponte*, seek a determination as to whether the Defendant was personally waiving his right to testify, or whether his attorney made the unilateral decision that Defendant should not testify, even after Defendant's affirmative expression of his decision to testify.

This Court has explicitly rejected the contention that a trial court has a duty to require that a Defendant's waiver of his right to testify be made on the record by the trial court's *sua sponte* inquiry as to the Defendant's knowledge and intent of such waiver. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir.2000); *Webber*, 208 F.3d at 551. This Court recognizes that a defendant's right to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the Defendant. *Webber*, 208 F.3d at 550 (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 n. 10, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). It is a right that falls within the ambit of the Fifth and Fourteenth Amendment's guarantee of due process of law in a fair adversary process. *See Rock*, 483 U.S. at 51 (citing *Faretta v.*

*California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Additionally, such a right is within the protections of the Sixth Amendment's right to "call a witness in [ones] favor," including one's self. *Id.* at 52.

In *Webber*, the defendant raised a similar allegation of error, on direct appeal of his conviction for conspiracy to possess with intent to distribute cocaine, that "his right to testify on his own behalf was waived by his attorney." 208 F.3d at 550. The court found that in determining the rights of the defendant in a decision to testify, the court must also consider the counselor's role in advising the defendant on whether or not the defendant should take the stand, even though the ultimate decision lies with the defendant. *Id.* at 551. When such tactical decisions are made to have the defendant refrain from testifying, although this decision ultimately lies with the defendant, the defendant's assent is presumed. *Id.* (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir.1993)). The court in *Webber* reasoned as such because "Defendant's attorney is presumed to follow the professional rules of conduct and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the Defendant's cause and the more particular duties to consult with the Defendant on important decisions and to keep the Defendant informed of important developments in the course of prosecution.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Absent evidence to the contrary, the trial court is in no way "required to *sua sponte* address a silent Defendant and inquire as to whether the Defendant knowingly and intentionally waived the right to testify, or ensure that the Defendant has waived the right on the record." *Id.* (citing *Joelson*, 7 F.3d at 177).

Subsequent to the government's closing of its case, the district court asked the defense whether or not there was an intention to "put any proof on?" The following colloquy took place in open court and on the record:

MR. CHAPMAN [Defense Counsel]: My client needs to decide whether he wants to testify.

THE COURT: Well, he's got about a minute and a half to decide. If you want to testify, you need to come around and you're the next witness. If you don't want to testify, stay where you are and say you don't want to testify. Which do you want to do?

MR. CAMPBELL: I'll testify.

THE COURT: You got a right to testify and you need to testify if you think it will help your case, and you need to talk to your lawyer about that. You and your lawyer both need to decide what's best for you. You've been in that case a long time, but the time is now, and you've got to decide whether you want to testify or not.

MR. CHAPMAN: Your Honor, the Defendant has decided, my client has decided not to testify.

THE COURT: Okay. He has that right, and it will be in the charge that no, nothing can be held against him for not testifying.

This Court in *Gonzales* and *Webber* agreed that " '[a] Defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court or discharging counsel.' " *Gonzales*, 233 F.3d 348, 356 (quoting *Webber*, 208 F.3d 545, 551). To ensure a defendant's constitutional rights, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel as to whether he should take the stand. *Webber*, 208 F.3d at 551.

Although the Defendant, in this instance, initially asserted that he desired to testify, the government correctly argues that the record does not reflect whether counsel conferred privately with Defendant before counsel stated to the court "the Defendant has decided, my client has decided not to testify." Based on the record before this Court, Defendant has not "overcome the presumption that he willingly agreed with his counsel's advice not to testify." *Gonzales*, 233 F.3d at 357. To hold otherwise would place an unduly burdensome duty upon the trial courts where the right allegedly being protected "qualitatively differs" from those fundamental rights that do require a *sua sponte* inquiry from the trial judge, such as entering a guilty plea, waiving a jury trial or foregoing the assistance of counsel. *Webber*, 208 F.3d at 552 (citing *United States v. Ortiz*, 82 F.3d 1066, 1069 n. 8 (D.C.Cir.1996); *United States v. Pennycooke*, 65 F.3d 9, 11 (3rd Cir.1995)).

Moreover, Defendant asserts that when the trial court did attempt to address the Defendant immediately after his decision to testify, but prior to Defendant's attorney's revocation of that decision, the court "impermissibly interfered with the decision of the Defendant regarding the right to testify." Ironically, the court at that time was merely apprising the Defendant of his rights. This Court recognizes that excessive judicial interference with a Defendant's strategic decision regarding the right to testify constitutes a "danger [that] is of great significance because the right not to testify counterpoises the right to testify, and the exercise of one is the waiver of the other." *Webber*, 208 F.3d at 552 (quoting *Joelson*, 7 F.3d at 178). Here, however, the trial court's advice was not excessive; rather its instructions were "non-coercive explanation[s] of the law." *Id.* Therefore, we find that the district

court did not violate Defendant's constitutional right to testify by not personally addressing Defendant when Defendant's attorney stated he would not testify on his own behalf.

### B. Motion to Continue

■ Defendant next argues that the district court abused its discretion in denying his motion for a continuance at the close of the government's case, therefore requiring Defendant to proceed with his case absent an alleged "beneficial" witness, thus violating his Sixth Amendment right to an adequate defense.

This Court reviews a district court's denial of a motion for continuance under an abuse of discretion standard. A Sixth amendment violation occurs only if the denial was an unreasonable and arbitrary "insistence upon expeditiousness in the face of a justifiable delay," and the defendant "must show that the denial resulted in actual prejudice in his defense." *United States v. Hall*, 200 F.3d 962, 964 (6th Cir.2000) (quoting *United States v. King*, 127 F.3d 483, 486 (6th Cir.1997)).

Defendant has an absolute right to prepare an adequate defense under the Sixth Amendment and a right to due process under the Fifth Amendment. *United States v. Crossley*, 224 F.3d 847, 854 (6th Cir.2000). Nevertheless, the actual prejudice needed to reverse the lower court's denial of Defendant's motion may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir.2003).

In the present case, Defendant's request for the continuance at issue occurred at the close of the government's case in chief. The Defendant stated that he discussed the relevance of another witness with his counsel during the court's lunch recess.

Before defense counsel opened his case, without the assistance of any defense witnesses, counsel requested a continuance, "in light of evidence the government has put on," to call a recently discovered witness that "would be very beneficial." (J.A. at 100–101). Counsel apprised the court of what little information he had on Defendant's requested witness: that he was a physician with the Johnson City Veteran's Administration Hospital located in a nearby county. When the trial court asked defense counsel what he expected the witness to say, counsel replied, "I'm a little bit in a difficult position, your honor." (J.A. at 101–102). After one more clarifying question as to when the defendant informed counsel about the witness, the judge denied the continuance, expressing his belief that the motion was a delaying tactic. (J.A. at 102).

The record evidence indicates that there had already been several continuances issued in this case, although each side had received one continuance upon request. The other two continuances were for the resolution of a pre-trial motion and an unreported continuance resetting the date from July 9, 2001 to the final trial date of July 12, 2001. Therefore, the court cannot lay the sole blame on the Defendant for the delay of the trial's start date.

Nevertheless, it is indisputable that the Defendant made his attorney aware of the necessity of the recently requested witness mid-trial, and that appropriate steps should have been taken to ensure the witness' presence at trial. Although, the defense counsel moved to continue the trial in light of the evidence the government put on, and for unknown reasons was not able to specify the nature of this witness' requested testimony, the Defendant failed to show the actual prejudice this witness' absence has caused the Defendant. *Powell*, 332 F.3d at 396.

Absent the requested witness' testimony, there were no other scheduled witnesses for the defense. Even if this were Defendant's last hope, the record is silent as to what evidence the witness would have testified, thereby providing us no insight as to whether or not this witness' absence truly prejudiced Defendant's defense. For those reasons, we find that the district court did not abuse its discretion in denying Defendant's motion.

### C. Admission of Search Warrant into Evidence

Finally, Defendant argues before this Court that the prosecution improperly entered into evidence the search warrant used to seize evidence from Defendant's residence, because the warrant contained hearsay statements from "concerned citizens" and presumptions of guilt by its assessment of probable cause. Additionally, Defendant argues that the warrant was irrelevant because it was duplicative of the seizing officer's testimony, and even if found to be relevant, its probative value outweighs its prejudicial effect. Conversely, Defendant's vague objection at trial before the district court was not based upon the grounds of his appellate arguments, those of hearsay or a presumption of guilt.[1] At best, this Court may construe Defendant's objection at trial as one of relevance.

If Defendant chooses to raise an objection on appeal not previously raised at trial, this Court will review such objection for plain error. Fed.R.Crim.P. 52(b); *United States v. Davis*, 306 F.3d 398, 413 (6th Cir.2002). This standard equally applies to instances where the objection raised on appeal, regarding evidentiary admissibility, is not based upon the same grounds to which they were objected at trial. *See U.S. v. Evans*, 883 F.2d 496, 499 (6th Cir.1989) ("The 'plain error' rule also applies [where] a party objects to [an evidentiary determination] on specific grounds in the trial court, but on appeal the party asserts new grounds challenging [that determination]." (citing *United States v. Johnson*, 722 F.2d 407, 409 (8th Cir. 1983) (per curiam))); *see also U.S. v. LeBlanc*, 612 F.2d 1012, 1016–17 (6th Cir. 1980) ("We conclude that counsel, on behalf of the appellant, did not preserve any right to predicate error on the trial court's ruling for the reason that he did not object to the use of the statements on the ground he now relies upon in this appeal."). Conversely, if an objection was made at trial upon the same grounds raised on appeal, this Court would utilize a harmless error standard of review. Fed.R.Crim.P. 52(a) (providing that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); *see also United States v. Stewart*, 306 F.3d 295, 318–19 (6th Cir.2002).

Given Defendant's new appellate argument, this Court will review his objection as to the search warrant's alleged hearsay under plain error; however, Defendant's relevance objection made at trial will be reviewed for harmless error.

Plain error is " 'an egregious error, one that directly leads to a miscarriage of justice.' " *United States v. Frazier*, 936 F.2d 262, 266 (6th Cir.1991) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988)). To establish plain error, the defendant must prove: (1) an error occurred in the district court; (2) the error was plain; (3) the error affected a substantial right of the defendant; and if the

---

1. Defendant's objection in the lower court was as follows: "Your Honor, I object to it. I don't think it's appropriate. It's a summary of what [Agent Monroe] talked about today. I don't think it's appropriate to go to the jury."

previous three are proven, the reviewing court may use its discretion in recognizing the error only if: (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998) (citing *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)).

This Court need not advance to step two in its plain error analysis, because no error was committed by the district court in allowing the warrant to be submitted into evidence. The warrant's admission into evidence only served as a duplicative summary of the incriminating evidence admitted to prove the charges against Defendant, and does not appear to have been unduly prejudicial. The admission of the warrant was not erroneous under the circumstances and did not adversely affect a substantial right of the Defendant.

█ Consequently, even if the court's admission of the search warrant had been erroneous, with regard to Defendant's relevance objection, such error would be harmless since the search warrant itself did not affect the substantial rights of the Defendant and should, therefore, be disregarded.

Therefore, for the above stated reasons, we **AFFIRM** the district court's judgment.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment and in most of Judge Clay's well reasoned opinion. My only purpose in writing separately is to note my view that the district court erred in allowing the warrant to be received in evidence. I fully agree, however, that the error was harmless.