**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Glenn Larry WILLIAMS, Defendant–**
**Appellant,**

No. 02–6352.

United States Court of Appeals,
Sixth Circuit.

Sept. 17, 2004.

Before: SUTTON and COOK, Circuit Judges; and ALDRICH, District Judge.[*]

SUTTON, Circuit Judge.

Glenn Larry Williams challenges his two convictions for (1) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) and for (2) possessing with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The government, he argues, failed to introduce sufficient evidence to support either conviction and introduced hearsay evidence—the affidavit from a search warrant—that undermined the legitimacy of both convictions. For the reasons that follow, we disagree and therefore affirm.

### I.

In January 2001, officers from the Maury County Drug Task Force of the Mount Pleasant, Tennessee police department suspected Williams of selling cocaine. In the course of the investigation, they asked Phyllis Hay, a prior purchaser of drugs from Williams, to make a controlled cocaine purchase from Williams, which she did. With police supervision and under

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

their surveillance, Hay bought a "corner bag" of cocaine from Williams at his residence and gave Williams a marked $100 bill in exchange for the drug. (A corner bag of cocaine is a plastic sandwich bag that is cut diagonally so that cocaine can be poured into the remaining corner for storage.) On the basis of this transaction, Investigator Tommy Goetz obtained a warrant to search Williams' residence.

On January 5, 2001, between 9:00 p.m. and 10:00 p.m., Tennessee police officers executed the warrant on Williams' house trailer to look for cocaine, as well as for money and any records of cocaine sales. Finding Williams at home with his girlfriend Wanda Welch, Investigator Goetz identified himself, presented the warrant, and gave Williams his *Miranda* warnings, after which Goetz and the accompanying officers searched the trailer. The search uncovered the following in the bathroom: a plastic bag containing white powder, a digital scale with a spoon beside it, plastic bags and scissors. The white powder tested positive for cocaine, a result later verified by a forensic chemist. Residue on the spoon also contained cocaine. Continuing their search, the police found the following in a closet adjacent to the master bedroom: a loaded .22 caliber rifle, additional .22 caliber ammunition and a blue bowl containing residue that also field-tested positive for cocaine. While still in the master bedroom, the officers discovered an envelope, hidden between the box springs and the mattress, containing $7,900 in $100 bills. Among these bills was the marked $100 bill used during Hay's controlled cocaine buy. On the nightstand in the bedroom, officers found a bottle of inositol, a substance that has two common uses: dentists use it as a numbing agent, and drug dealers use it to cut (or reduce the purity of) cocaine. In the bedroom at the opposite end of the mobile home, where Williams' son Chris stayed, the officers found drug paraphernalia and a small amount of marijuana.

After Williams waived his *Miranda* rights, the officers questioned him about the drugs they had found. According to the police, Williams claimed ownership of all of the drugs, including those found in his son's room, and estimated that he made about $600 a month selling cocaine. Williams claimed, however, to have borrowed the rifle from a friend, never to have handled it inside the house and only to have moved it around on the porch.

At trial, when the prosecution called Goetz to testify about the search, the prosecutor asked the court to admit the search warrant, including Goetz's accompanying affidavit, into evidence. Over a hearsay objection by defense counsel, the judge admitted the warrant. After cross-examination of another police officer revealed Phyllis Hay as the informant mentioned in the affidavit, Hay testified that she made the controlled cocaine purchase from Williams and that she had purchased cocaine from Williams in the past.

The jury acquitted Williams of possessing marijuana with the intent to distribute it, but convicted him of being a felon in possession of a firearm and of possessing cocaine with the intent to distribute it.

## II.

Williams challenges his convictions on three grounds. He argues that the district court committed reversible error when it admitted the search warrant into evidence over his counsel's hearsay objection. He challenges the sufficiency of the evidence supporting his conviction for being a felon in possession of a firearm. And he challenges the sufficiency of the evidence supporting his conviction for possessing cocaine with the intent to distribute it. We review the district court's legal conclusions

de novo and its findings of fact for clear error. *See United States v. Jenkins,* 345 F.3d 928, 935 (6th Cir.2003).

### A.

▮ Hearsay, the Federal Rules of Evidence tell us, is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed.R.Evid. 801, which "is not admissible except as provided by these rules," Fed. R.Evid. 802. Acknowledging that the Goetz affidavit attached to the search warrant contains out-of-court statements about the controlled purchase by Hay from Williams, the government argued at trial (and now on appeal) that it could be admitted because it was not offered to prove that the controlled purchase with Williams occurred but to alleviate any concerns the jury might have about the validity of the search. We disagree.

For one, Williams never challenged the validity of the search, much less raised the issue in front of the jury. For another, the government's theory argues too much. Were this theory correct, all affidavits made in support of search warrants—even those containing evidence bearing directly on the criminal trial—could be admitted, no matter how irrelevant the legitimacy of the search to the factual disputes at the heart of the trial. For still another reason, this theory is incompatible with the Rules of Evidence themselves. Rule 803(8) contains a public-records exception to the hearsay rule but then proceeds to exclude "in criminal cases matters observed by police officers and other law enforcement personnel." Fed.R.Evid. 803(8).

▮ It is one thing, however, to say that the affidavit contained inadmissible hearsay; it is another to say that the admission of this evidence requires a new trial. Be-

cause "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded," Fed. R.Crim.P. 52(a), and because the admission of this evidence did not undermine the fairness of Williams' trial, we conclude that the admission of the affidavit was harmless.

Both the affiant (Investigator Goetz) and the person whose drug buy was at the center of the affidavit (Hay) testified at trial about the matters described in the affidavit and, most critically, were cross-examined by Williams' counsel about these very matters. On top of this, abundant other evidence, including Williams' admissions of guilt and the contraband found in his residence, made the impact of this affidavit on the trial marginal at best. Under these circumstances, the admission of the affidavit was harmless error. *See United States v. Campbell,* 86 Fed.Appx. 149, 157 (6th Cir.2004) (upholding admission of a search warrant into evidence when the warrant merely duplicated and summarized other admissible evidence and was not unduly prejudicial); *see also United States v. Wilson,* 922 F.2d 1336, 1339 (7th Cir.1991) (upholding admission of warrant as not unduly prejudicial where jury learned of its contents from another source); *United States v. Orr,* 825 F.2d 1537, 1544 (11th Cir.1987) (upholding inadvertent admission of warrant when jury heard other testimony similar to the contents of the warrant).

### B.

▮ Williams next challenges the sufficiency of the evidence regarding his felon-in-possession-of-a-firearm conviction. In considering such claims we ask whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir.2004) (quoting *United States v. Avery*, 128 F.3d 966, 971 (6th Cir.1997)).

The essential elements of the felon-in-possession charge are "(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce." *United States v. Moreno*, 933 F.2d 362, 372 n. 1 (6th Cir.1991) (quoting *United States v. Petitjean*, 883 F.2d 1341, 1347 (7th Cir. 1989)); *see* 18 U.S.C. § 922(g)(1). Williams challenges only the second element, arguing that the government did not prove that he possessed the weapon. We disagree.

Possession under § 922(g)(1) includes actual possession and constructive possession, *DeJohn*, 368 F.3d at 545, with constructive possession existing "when a person does not have actual possession, but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Layne*, 192 F.3d 556, 572 (6th Cir.1999). When a defendant has dominion over the premises in which the firearm is located, that fact can suffice to prove that the defendant had control over the firearm. *Id.; see also United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998).

In this case, the police found the weapon in the bedroom closet of Williams' mobile home. Williams and his girlfriend testified that Williams placed "booby traps" on the closet so that he could determine if anyone had been in it, which showed that Williams maintained careful dominion and control over his closet. Williams also admitted that he knew the rifle was on the premises, claiming that he borrowed it from a friend and that he moved it from one location on the porch to another so that he could sweep. On cross-examination, Williams said that he had claimed possession of the rifle to keep his girlfriend and his son out of trouble, but then admitted that it would not have been illegal for the other occupants to possess the firearm. On this record, the jury did not exceed the boundaries of reasonableness in concluding that Williams either had possession over the firearm by exercising control over the premises or had the power and intention to exercise control over the firearm itself.

On appeal, Williams raises one other related contention. He contends that the evidence shows that someone moved the rifle from the porch to the closet without his knowledge—an essential fact, he asserts, because his lack of knowledge of the specific location of the rifle at the time of the search negates his possession of it. But dominion over the premises in which the firearm is located generally suffices to establish possession. *Layne*, 192 F.3d at 572. Having conceded that he borrowed the rifle from a friend (took possession of the rifle, in other words) and having admitted that he knew the rifle was on the premises, he indeed had the power and intention to exercise control over the rifle, either directly or through his girlfriend or son.

### C.

██ Williams, lastly, challenges the sufficiency of the evidence supporting his conviction for possessing cocaine with the intent to distribute it. To establish a violation of 21 U.S.C. § 841(a), the government has to prove that the defendant "(1) knowingly or intentionally, (2) possess[ed], (3) with the intent to distribute, (4) a controlled substance." *United States v. Monger*, 185 F.3d 574, 577 n. 2 (6th Cir.1999). On appeal, Williams does not contest whether he knew he possessed cocaine or

whether cocaine is a controlled substance. He instead argues that the government failed to quantify how much of the white powder found in his bathroom was cocaine as opposed to some other substance (such as inositol). The argument is unavailing.

Williams admitted to the officers searching his home that he made about $600 a month selling cocaine. Such an admission of ongoing drug dealing by itself would allow a reasonable jury to infer that he had the requisite intent to distribute. Williams also possessed 22.5 grams of cut cocaine in close proximity with the necessary implements to package it for individual sale: a digital scale, a spoon, plastic bags, scissors, and a common cutting agent, inositol. Finally, he had $7,900 in $100 bills. In view of Hay's testimony that she customarily purchased cocaine from Williams in $100 amounts, the presence of the marked $100 bill and Goetz's testimony that the search revealed no evidence that Williams was gainfully employed, a jury could reasonably infer that the $7,900 in cash came from drug sales.

Contrary to Williams' suggestion, *United States v. Jones*, 945 F.2d 747 (4th Cir. 1991), does not alter this conclusion. In *Jones*, the court determined that 2/500 of a gram of cocaine found on drug paraphernalia did not suffice to support a conviction for possession with intent to distribute. *Id.* at 749. While the exact quantity of cocaine found in the plastic bag in Williams' bedroom was not quantified, a forensic chemist testified at trial that the bag weighed 22.5 grams, contained cocaine and was "not heavily cut." JA 93. A reasonable jury therefore could infer that a significant portion of the 22.5 grams was in fact cocaine—which suffices to establish the intent-to-distribute element of the crime.

### III.

For these reasons, we affirm.