# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 28, 2017

v

CIERRA MARIE ROZIER,

Defendant-Appellant.

No. 333241
Oakland Circuit Court
LC No. 2015-256052-FH

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial conviction of second-degree home invasion, MCL 750.110a(3). Defendant was sentenced to five years' probation. We affirm.

Defendant argues that she was denied the effective assistance of counsel because her trial attorney, Jolina O'Berry, failed to (1) prepare and present a defense to the identification testimony, (2) adequately investigate and prepare an alibi defense, (3) properly advise defendant in connection with the decision about whether defendant would testify, and (4) move for a mistrial when the jury indicated it was unable to reach a unanimous verdict. We disagree.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (quotation marks and citation omitted). This Court reviews the trial court's findings of fact for clear error and reviews questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. The trial court denied defendant's request for a *Ginther*[1] hearing, and this Court's review is limited to the facts apparent on the existing record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

To establish ineffective assistance of counsel, a defendant must show that: "(1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. . . . A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012); see also *Smith v Spisak*, 558 US 139, 150; 130 S Ct 676; 175 L Ed 2d 595 (2010), and *Trakhtenberg*, 493 Mich at 51. Effective assistance of counsel is strongly presumed, *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012); there is a strong presumption that counsel has engaged in "sound trial strategy," *Horn*, 279 Mich App at 40. The defendant has the burden of proof, and may overcome this presumption by showing that counsel failed to perform an essential duty and that this failure was prejudicial to the defendant. *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). The "benefit of hindsight" may not be used to judge counsel's performance. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

## I. IDENTIFICATION TESTIMONY

Defendant first argues that O'Berry provided ineffective assistance of counsel because she did not present a defense to the eyewitness testimony. Defendant alleges that the photographic lineup that the two eyewitnesses, Gary Benton and Leo Sias, viewed was unduly suggestive, and therefore, defense counsel should have moved to suppress it. In addition, defendant alleges that O'Berry failed to impeach Benton with his prior inconsistent testimony at the preliminary examination. Defendant has not shown that O'Berry's failure to move to suppress the photographic lineup or her alleged failure to impeach Benton was below an objective standard of reasonableness, or that but for O'Berry's performance, the result would have been different, or that the result was fundamentally unfair or unreliable. *Lockett*, 295 Mich App at 187.

## A. PHOTOGRAPHIC LINEUP

Defendant argues that the photographic lineup was unduly suggestive because out of the six photographs included, defendant had the lightest complexion, defendant had her hair up, the woman in the first photograph had blonde hair, and there was a pencil mark blacking out defendant's front tooth. Defendant asserts that because of the suggestiveness, she received ineffective assistance of counsel when O'Berry failed to move to suppress the photographic lineup. We disagree.

To sustain a due process challenge to a photographic lineup, a defendant must demonstrate that "the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), implied overruling on other grounds recognized in *People v Perry*, 317 Mich App 589, 598; 895 NW2d 216 (2016). When an unduly suggestive pretrial identification procedure is used, suppression of the in-court identification is appropriate, unless there is an independent basis for its admission. *People v Gray*, 457 Mich 107, 114-115; 577 NW2d 92 (1998). The admission of identification evidence will not be reversed unless it is clearly erroneous, and clear error exists when this Court is "left with the definite and firm conviction that a mistake has been made." *Kurylczyk*, 443 Mich at 303.

In *Kurylczyk*, the defendant argued that the photographic lineup was impermissibly suggestive because he was the only man in the picture dressed in clothing matching the clothing reported to be worn by a robber, his photograph was taken from a closer position so he appeared larger than the others, and the defendant did not have a mustache but three of the photographs included men with mustaches. *Id*. at 303-304. The court noted that photographic lineups are not unduly suggestive if the other photographs are fairly representative of the physical features of the defendant. *Id*. at 304. "[D]ifferences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup have been found not to render a lineup impermissibly suggestive." *Id*. at 304-305 (citations omitted). In determining whether a photographic lineup is unduly suggestive in light of all the surrounding circumstances, courts consider the following nonexclusive factors:

> " '[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " [*Id*. at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

The *Kurylczyk* Court found that the photographic lineup in that case was not unduly suggestive because the witnesses had ample opportunity to view the robber during the offense, both witnesses gave a description to the police shortly after the crime was committed, both witnesses were certain that the defendant was the robber, the photographic lineup was conducted within two weeks of the crime, and neither witness was "panicked or otherwise psychologically debilitated by the crime." *Kurylczyk*, 443 Mich at 306-308.

When applying these factors, it is clear that the photographic lineup in this matter was not unduly suggestive. Both Benton and Sias testified that they saw a woman at the back of a U-Haul parked outside Brittney Dawood's apartment. The woman caught Sias's attention because he found her attractive. Benton stated that the woman was young and that he noticed her hairstyle and body type. When Detective Ryan Losh spoke to Sias and Benton before the photographic lineup, they told Detective Losh that they would be able to identify the woman at the U-Haul. Both Benton and Sias were "certain" that defendant was the female that they saw at the U-Haul when they identified her at the photographic lineup. Each picked her out for Detective Losh immediately. In addition, the photographic lineup took place within days of Benton and Sias seeing the U-Haul in the parking lot. Under all the circumstances, the photographic lineup was not unduly suggestive.

Defendant also argues that the photographic lineup should have been suppressed because Benton and Sias were not separated when Detective Losh presented them with the lineup. The record does not support this assertion. Detective Losh testified that he presented the photographic lineup to Benton and Sias "independently . . . ." He "went to separate sides and [] handed each of them . . . the same lineup." Because the record does not demonstrate that the photographic lineup was conducted in the presence of both witnesses, O'Berry's failure to move to suppress the identifications on this ground was not objectively unreasonable.

Because the photographic lineup was not unduly suggestive, defendant cannot demonstrate that O'Berry's failure to move to suppress the lineup identification by the witnesses was "below an objective standard of reasonableness under prevailing professional norms . . . ." *Lockett*, 295 Mich App at 187.[2] In addition, even though we need not reach this prong, we note that defendant has not demonstrated that there is a reasonable probability that, but for O'Berry's failure to move to suppress, the result would have been different, or that the result was "fundamentally unfair or unreliable." *Id*. This is because the in-court identifications of defendant by both Benton and Sias were admissible in that there was an independent basis for their identifications that was untainted by the pretrial procedure. *Kurylczyk*, 443 Mich at 303. Indeed, their identifications of defendant in court were based on their direct observations of defendant that day.

## B. PRELIMINARY EXAMINATION TESTIMONY

Defendant also argues that O'Berry provided ineffective assistance of counsel by failing to thoroughly impeach Benton based on his testimony at the preliminary examination. At the preliminary examination, when asked if he saw any of the individuals that were at the U-Haul in court that day, Benton responded, "Maybe. . . . The thing is it's been a few months ago." Benton also stated:

> I -- I remember the -- the body type of the individual, I remember the hairstyle of the individual, facial features I didn't really get a good look at the facial features but I do remember body style and hairstyle.

Benton stated at the preliminary examination that he was nervous.

Based on this prior testimony, defendant argues that O'Berry should have further impeached Benton's identification of defendant at trial because he "could not recognize the woman's face."

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *Horn*, 279 Mich App at 39. This Court will not second-guess a trial attorney's decision regarding trial strategy or assess a trial attorney's competence based on hindsight. *Id*. Here, defendant has failed to overcome the strong presumption that O'Berry engaged in sound trial strategy by failing to further impeach Benton. *Trakhtenberg*, 493 Mich at 52.

During cross-examination, O'Berry asked Benton about his testimony at the preliminary examination:

---

[2] Because the lineup was not unduly suggestive, a motion to suppress the lineup would have been without merit, and trial counsel is not required to assert a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

*Q.* And if I direct you back again when you were under oath and testimony on September 23, 2015 when you testified again, on page seven, about remembering the hairstyle and facial features, did you -- you didn't really remember that she had curly hair and didn't state that on that day. You also, on that day, did not under oath state that she was in pajamas, correct?

*A.* Wasn't asked, I don't recall. Was I asked what kind of clothes she was wearin' or –

*Q.* But you remember today for sure her hair was curly, and she was in pajamas.

*A.* You're asking me if the person on the back of that truck is in this courtroom today, and I told you yes. She's right there.

*Q.* But you weren't able to identify her until you saw a photo lineup, is that correct?

*A.* Yeah.

This questioning by O'Berry demonstrates that she did, in fact, attempt to impeach Benton with his prior testimony from the preliminary examination. Defense counsel has wide discretion regarding strategy at trial "because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This Court will not substitute its judgment for that of trial counsel concerning matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The fact that a trial strategy fails to work does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Counsel did attempt impeachment, and may have wanted to avoid delving too far into the preliminary examination testimony because Benton testified at the preliminary examination about his lineup identification of defendant. Defendant cannot demonstrate that O'Berry's conduct fell below an objective standard of reasonableness. Nor can she demonstrate prejudice, given Sias's identifications and Benton's lineup identification. The lineup identifications, as discussed above, were strong and unequivocal, and it is not likely that impeachment regarding Benton's inability to perform an in-court identification at the preliminary examination would have made an impact on the outcome of the case. Reversal is not warranted.

II. ALIBI DEFENSE

Defendant argues that O'Berry provided ineffective assistance of counsel because she failed to properly investigate and prepare an alibi defense. We disagree.

Defendant asserts that she was working three jobs at the time of the home invasion, and provided trial counsel with names of people that O'Berry could call as alibi witnesses. Defendant also argues that Makia Coleman-Carter could have provided further documentation to support defendant's alibi defense. As an initial matter, defendant relies upon her affidavit submitted with her brief on appeal to argue that she was working three jobs at the time of the offense and that she provided names of witnesses to her attorney. However, this affidavit was

not part of the lower-court record and therefore will not be considered on appeal. *People v Stokes*, 312 Mich App 181, 205; 877 NW2d 752 (2015), lv pending; *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000).[3]

"When a defendant alleges ineffective assistance of counsel, he must present a record which factually supports his claim." *People v Armstrong*, 124 Mich App 766, 770; 335 NW2d 687 (1983). When there is no record evidence to support a defendant's claim, this Court has no basis to consider the claim. *Id.* There is no evidence in the lower court record demonstrating that O'Berry failed to properly investigate and demonstrate an alibi defense. Rather, O'Berry called Coleman-Carter as a witness to testify as an alibi witness. Coleman-Carter testified that defendant was her employee and that defendant was present at work on the day of the offense. Because O'Berry called an alibi witness to testify, defendant cannot demonstrate that O'Berry's conduct fell below an objective standard of reasonableness. *Lockett*, 295 Mich App at 187.

Defendant argues that O'Berry provided ineffective assistance of counsel because O'Berry did not have Coleman-Carter produce further documentation from the computer and security system at defendant's place of employment to demonstrate that defendant was at work on the day of the offense. However, this evidence would have been cumulative of Coleman-Carter's testimony that defendant was at work that day *and* that she had checked records to verify this.[4] The record does not demonstrate that O'Berry failed to provide effective assistance of counsel by failing to have Coleman-Carter provide further documentation of defendant's work attendance on the day of the home invasion. O'Berry's performance did not fall below an objective standard of reasonableness in this respect. *Lockett*, 295 Mich App at 187. Further, defendant cannot demonstrate that the admission of these documents would have resulted in a different result when the jury convicted defendant while having the same information that these documents would provide—evidence that defendant was at work that day.

## III. WAIVER OF DEFENDANT'S RIGHT TO TESTIFY

Defendant argues on appeal that she was denied the effective assistance of counsel because defendant waived her right to testify, but O'Berry should have called defendant to testify to rebut the claim that defendant had a key to Dawood's apartment.

Criminal defendants have the constitutional right to testify in their own defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Trial counsel must advise a defendant of this right; however, the defendant has the ultimate decision regarding whether to

---

[3] Even if we were to consider it, we would find no basis for reversal. As explained in footnote 3, *infra*, the evidence of the additional jobs was irrelevant. Concerning the names of witnesses, the affidavit is nonspecific; no statements from the purported witnesses themselves are included.

[4] The evidence of defendant's working three jobs would not have been relevant at trial because Coleman-Carter, defendant's own witness, unequivocally testified that defendant was working *for Coleman-Carter* at the time in question. On appeal defendant makes this same argument, i.e., that she was working for Coleman-Carter at the time in question.

testify at trial. *Id*. If trial counsel provides on the record that a defendant has decided to waive the right to testify, the defendant's assent is presumed. See *United States v Webber*, 208 F3d 545, 551 (CA 6, 2000). If a defendant wishes to testify against the advice of her attorney, the defendant may insist on testifying and inform the trial court, or discharge counsel. *Id*. "When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id*.

The record clearly demonstrates that defendant waived her right to testify at trial. O'Berry stated on the record that she reviewed defendant's rights and the implications of testifying or not testifying with defendant as part of her trial strategy. O'Berry questioned defendant on the record, and defendant testified that she understood her Fifth Amendment right to remain silent, and that the decision whether to testify was ultimately hers.

Even assuming, arguendo, that O'Berry advised defendant against testifying, the record contains no evidence that this advice was unsound. Defendant claims on appeal that she would have testified that she did not have a key to Dawood's apartment. However, the other evidence would have put her credibility into question. Benton and Sias both identified defendant during the photographic lineup, and both identified defendant in court as the woman at the U-Haul. Dawood testified that she gave defendant a key to the apartment. In addition, had defendant testified, she would have been subject to cross-examination, and she could have been impeached by her statement to the police that she did not recall where she was at the time of the break-in. Defendant has failed to overcome the presumption that O'Berry's performance in allegedly[5] having defendant waive her right to testify was sound trial strategy, and defendant has not demonstrated that but for defendant's waiver, the result of the proceeding would have been different.

## IV. MISTRIAL

Defendant argues that O'Berry provided ineffective assistance of counsel when the jury sent the trial court a note during deliberations asking, "What if we can't all agree?" and O'Berry did not move for a mistrial.

In the lower-court file there is a note sent from the jury to the trial court asking, "What happens if we all can't agree?" There was no discussion on the record of this note between the trial court and counsel. However, a note was written back to the jury on the same document, stating, "You have all of the instructions." The response is initialed by "AS" for the prosecuting attorney, and "JO" for O'Berry. Defendant asserts that when she was informed of this note from the jury, she asked O'Berry for time to consult with her father regarding seeking a mistrial. Even taking this assertion as accurate, defendant has failed to demonstrate that O'Berry's agreement to the response to the jury, as evidenced by her initials, was below an objective standard of reasonableness.

---

[5] It is not apparent from the lower-court record that O'Berry *advised* defendant not to testify.

"A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *Horn*, 279 Mich App at 36. Any irregularity that occurs must be prejudicial to the rights of the defendant, and impair the defendant's ability to get a fair trial, for mistrial to be warranted. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). A trial court's curative instruction to the jury is presumed to cure most errors. *Horn*, 279 Mich App at 36.

The note from the jury and the response did not warrant a new trial. The jury had already received instructions on the requirement of a unanimous verdict. The response to the note, that the jury already had the instructions that it needed, is presumed to cure the issues that the jury was having regarding reaching a unanimous verdict. See, generally, *id*. Even if defendant requested time to speak with her father and wanted O'Berry to move for a mistrial, "[c]ounsel is not obligated to make futile objections." *People v Meadows*, 175 Mich App 355, 362; 437 NW2d 405 (1989). O'Berry's conduct did not fall below an objective standard of reasonableness. *Lockett*, 295 Mich App at 187.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Michael J. Riordan